BERGERON and others vs. RICHARDOTT, imp.

*April 8 — May 10, 1882.*

EQUITY: PARTNERSHIP: NOTICE. *(1) When real property treated in equity as belonging to firm. (2) Notice, to purchaser, of equitable rights of firm.*

RES ADJUDICATA. *(3) What issues of fact determined by judgment.*

55  129
86  561

1. Where the value of a lot of land, used for partnership purposes, was charged to the partnership on the books of the firm, and credited to M., the partner who held, and still holds, the legal title thereto, it would be treated in equity as partnership property; and where, on the dissolution of that firm and formation of a new one as its successor in business, the lot was credited to the old firm on the books of the new, and all this with the knowledge of M., it must be treated in equity as property of the new firm, as against M. and his grantee with notice.

2. Actual, open and notorious occupation of the lot by the firm for partnership purposes, at the time when advances were made to M., to secure which he afterwards executed a conveyance of the lot, was notice to all the world of the equitable rights of the firm in respect to it; and the fact that the conveyance was not actually made until after the firm ceased to occupy the lot, would not make the grantee, as against the partners other than M., a purchaser in good faith within the meaning of the statute.

3. Where the verdict and judgment in an action involving two issues of fact are consistent with a finding either way as to one of such issues, the same is not *res adjudicata* between the parties.

APPEAL from the Circuit Court for *Chippewa* County.

From August, 1872, to September, 1874, the plaintiffs and the defendant Mairet were partners in business at Chippewa Falls, under the firm name of Mairet, Le Boef & Co. They ceased doing business as such at the latter date. In the spring of 1874, the defendant Mairet borrowed money on his individual account and for his own use of the defendant *Richardott;* and when the loan was negotiated, it was agreed between them that it should be secured by a conveyance of the lot on which was the store where the firm transacted its business. The record title to the lot was in Mairet. In

November, 1874, Mairet caused the same to be conveyed to
*Richardott*, pursuant to such agreement, by the defendant
Kleinhaus, to whom Mairet had theretofore conveyed the
property as security for debts he owed Kleinhaus and another.
The plaintiffs paid the debts of the firm to an amount which
left the defendant Mairet indebted to them about $7,500.
Mairet is supposed to be insolvent. From the time of the
conveyance to him as aforesaid, *Richardott* received the rents
of the property conveyed. This action was brought to dissolve
the copartnership, and for an accounting between the partners;
also to procure the application of the property so conveyed
(claimed to be partnership property) to the payment of
partnership debts, and for an accounting by *Richardott* for
the rents and profits thereof. The circuit court held the lot
to be partnership property, stated an account of the rents
received by *Richardott*, and gave judgment that his convey-
ance is void as against the plaintiffs, and that the plaintiffs
recover the rents so received by him. The court also stated
an account between the partners. *Richardott* appealed from
so much of the judgment as affects him.

For the appellant there was a brief by *Wheeler & Marshall*,
and oral argument by *Mr. Marshall*. They contended that
the property in question was not partnership property. To
constitute it such, it must have been purchased with partner-
ship funds for partnership purposes, and have been used for
partnership purposes. Parsons on Part., 365; 1 Wash. R.
P., 668. They also contended that the verdict in the former
action was conclusive upon the question here at issue, and
that the appellant was a *bona fide* mortgagee of the property.

For the respondent there was a brief by *Bingham &
Pierce*, and oral argument by *Mr. Bingham*. Upon the
question whether the real estate was partnership property,
they cited *Bardwell v. Perry*, 19 Vt., 292; Tiffany & Bul-
lard on Trusts, 98; *Piatt v. Oliver*, 3 McLean, 27; *Andrews
v. Brown*, 21 Ala., 437; *Coster v. Bank of Georgia*, 24 id.,

37; *Dupuy v. Leavenworth,* 17 Cal., 262; *Sigourney v. Munn,* 7 Conn., 11; 1 Parsons on Con., 148 and note; *Geery v. Cockroft,* 33 N. Y. Sup. Ct., 146; Lindley on Part., 643–652; *Smith v. Smith,* 5 Ves. Jr., 193; Parsons on Part., 364–6; *Fairchild v. Fairchild,* 5 Hun, 407; 2 Barb. Ch., 165; *Howard v. Priest,* 5 Met., 582; Willard's Eq. Jur., 711, 712.

LYON, J. 1. One of the controlling questions in this case is, Was the lot in controversy partnership property when Mairet conveyed it to the appellant, *Richardott,* to secure his indebtedness to the latter? The testimony satisfies us that the question must be answered in the affirmative. We think the following facts are established by the proofs: The firm of Mairet, Le Boef & Co., composed of the plaintiffs and the defendant Mairet, was the successor of the firm of Mairet, Allen & Co. The members of the latter firm were one Allen, the plaintiffs *Le Boef* and *Etier* and the defendant Mairet. Allen retired from that firm, and the plaintiff *Bergeron* took his place, whereupon the firm name was changed to Mairet, Le Boef & Co. *Bergeron* paid in, as his part of the capital of the firm, $4,000 in cash, and the other partners put in their interest in the property of the old firm, as their share of the capital stock, $4,000 by Mairet, and $4,000 by *Le Boef* and *Etier* jointly. The lot in controversy was charged to the firm of Mairet, Allen & Co. on the books of that firm, and credited to Mairet. Hence, although no formal conveyance of it was made to the firm, it was essentially firm property, and a court of equity will so regard it. See cases cited in brief of counsel for plaintiffs. Soon after the new firm was formed, the lot was entered on its books at an increased price to the credit of the old firm. Mairet must have known of these entries, for he was the manager of the business of the firm; yet it does not appear that he ever objected to them. Moreover, he twice executed

conveyances of an undivided two-thirds of the lot to his partners, but afterwards destroyed them. The circuit court found that one of these conveyances was delivered to his partners, and we are inclined to think the finding is supported by the evidence. In the view we take of the case, it is not very material whether the legal title ever passed to the other members of the firm or not. It is sufficient for the plaintiffs if the firm was the equitable owner, and we think it was.

2. But it is claimed that in a former suit between the same parties it was determined that the firm had no interest in the lot in controversy, and the doctrine of *res adjudicata* is invoked to defeat the claim of the plaintiffs. That action was brought by the appellant against the firm on two promissory notes of the firm. The firm answered, alleging payment of the notes. On the trial the defendants relied upon the conveyance of the store lot by Mairet to the appellant as payment of the notes. The court instructed the jury that if the lot was partnership property, "and was so conveyed in payment of the notes," the appellant could not recover. There was a general verdict for the appellant for the amount of the notes, on which judgment was entered against the firm. From this statement of the former suit it appears that two questions of fact were submitted to the jury. These are: (1) Was the lot partnership property? and (2) Was it conveyed to the appellant in payment of his notes against the firm? The jury may have found that the lot was partnership property, but that it was not so conveyed in payment of the notes. An affirmative finding on the first question and a negative finding on the second would have resulted in a verdict for the appellant. Hence, the verdict is entirely consistent with a finding either way on the question of ownership; and this brings the case within the rule of *Van Valkenburgh v. Milwaukee*, 43 Wis., 574. We conclude that

the verdict and judgment in the former suit do not estop the plaintiffs to maintain in this action that the lot was partnership property.

3. It only remains to determine whether the appellant took the conveyance from Mairet in good faith, and without notice that the firm was the equitable owner of the lot conveyed to him. When the appellant made the loan to Mairet in the spring of 1874, to secure which the conveyance was executed, the firm was in the actual, open and notorious possession of the lot, its place of business being the store situated upon it. This was constructive notice to all the world of the interest of the firm in the property, and deprives the appellant of the character of a purchaser without notice of the interest of the firm in the property, whether it was a legal or a purely equitable interest. True, the conveyance was not executed until after the firm ceased to occupy the premises; but the agreement for the conveyance was made, and the money advanced on the faith of such agreement, when the firm were in the actual possession and occupancy of the lots. A court of equity will regard the conveyance as executed when under the agreement it should have been executed, and will consider the rights of all parties as fixed and established by the conditions which existed when the loan and agreement for the conveyance were made. On this basis the appellant is not a *bona fide* purchaser of the lot without notice of the interest of the firm therein. Were it held that the rights of the parties are fixed and established by the conditions existing when the conveyance was actually executed, the same result would follow. In that case the conveyance would be merely a security for a pre-existing debt, and all the authorities here and elsewhere agree that such a conveyance would only transfer the interest of Mairet, without affecting the legal or equitable title of the firm. The circuit judge seems to have taken the latter view, for he found that the conveyance was made as a security for a pre-existing debt. Whether it

was so made or not is quite immaterial; for, if it was not, the appellant received it with constructive notice of the interest of the firm in the lot, and hence cannot, by virtue of it, assert a title paramount to that of the firm. In other words, the conveyance must be regarded as made when the money therefor was advanced and the agreement made, or it must be held that it was given for a pre-existing debt. In either view the result is the same.

For reasons which he deemed sufficient, the learned counsel for the defendant earnestly urged us to disregard the findings of the court below, and to decide the case upon the proofs as we would if there were no findings in the record. While we have not felt at liberty to comply fully with this request, we have examined the case from a somewhat different standpoint than that from which the circuit judge considered it; and whatever we may think of some of his findings, we are of the opinion that the evidence supports the judgment. The judgment must therefore be affirmed.

*By the Court.*— Judgment affirmed.