## HUMPFNER v. D. M. OSBORNE & Co. *et al.*

1.  A complaint in an action, in which it is alleged that at a certain time the plaintiff was the owner and in the possession of certain personal property; that it came into the possession of the defendants; and that, while so in their possession, they unlawfully and wrongfully converted it to their own use, to the damage of plaintiff,—is sufficient under the Code of this state. The further allegation that defendants "took possession of said personal property" should be treated as surplusage.
2.  Where the complaint alleged ownership, which was denied by a general denial in the answer, an allegation in the answer that the property described in the complaint was included in a chattel mortgage given by plaintiff to the defendant, and was at the time it was so mortgaged the property of the plaintiff, is a clear and distinct admission that the property described in the complaint was the property of plaintiff, as plaintiff, being then the owner, will be presumed to have remained the owner to the time of trial, in the absence of any allegation that the title had been in the meantime transferred.
3.  Facts admitted by the pleadings need not be submitted to or found by a jury in a special verdict. The facts admitted by the pleadings, together with those found by the jury, present the whole case in proper form for the consideration of the court; but a special verdict must find all the material facts not admitted, put in issue by the pleadings, when no general verdict is found.
4.  A provision in a chattel mortgage that, if the "mortgagee shall at any time deem itself insecure, then thereupon and thereafter it shall be lawful for such mortgagee * * * to take such property * * * and hold and sell or dispose of the same," does not confer upon the mortgagee the absolute and arbitrary power to declare itself insecure without proper cause, and authorize it to proceed to take possession and sell the mortgaged property. Until the debt matures, or some act is done or threatened by the mortgagor, specified in the mortgage, which would

authorize the mortgagee to take possession of and sell, the mortgagor's possession cannot be legally disturbed. *Held, further*, that the questions submitted to the jury in this case were pertinent and proper, and that the fact of whether or not defendant D. M. Osborne & Co. did deem itself insecure was immaterial, and was properly omitted from the questions submitted.

5. Defendants pleaded and relied upon the defense that during the pending of this action D. M. Osborne & Co. brought an action in the justice court against Humpfner, the plaintiff herein, to recover the sum due on a promissory note given by him to said D. M. Osborne & Co., in which suit two defenses were pleaded by Humpfner, one of which was that the note was paid by the foreclosure and sale under the mortgage. Evidence was offered and received tending to establish this defense, but it was subsequently stricken out. *Held*, error. If the defense, as alleged, could be proven, then Humpfner was estopped from asserting that the foreclosure sale was invalid. *Held further*, that, there being two defenses pleaded in the justice court action, it was competent to show by extrinsic evidence upon which defense the justice rendered his judgment.

(Syllabus by the Court.  Opinion filed Oct. 20, 1891.)

Appeal from the circuit court, Grant county. Hon J. O. ANDREWS, Judge.

Action for damages for the unlawful conversion of personal property. Defendants answered denying generally and setting up facts claimed by them to constitute a justification. Judgment for plaintiff. Defendants appeal. Reversed.

The facts are fully stated in the opinion.

*Taubman & Potter* for appellants.

If a party, having the right to repudiate or affirm a transaction, affirms it, he cannot afterwards resort to his right of repudiation. Hermon Estoppel, § 466; Comham v. Thompson, 111 Mass. 270; Kinney v. Kierman, 49 N. Y. 164; Moller v. Tuska, 87 N. Y. 166; Riley v. Albany Sav. Bank, 103 N. Y. 669; Thompson v. Howard, 31 Mich. 309; Goss v. Mather, 46 N. Y. 689; Beurman v. Van Buren, 44 Mich. 496; Farrull v. Myers, 59 Mich. 179; Neill v. Burton, 49 Mich. 53; Thomson v. Howard, 31 Mich. 309; 10 Am. State Rep. 487.

It was the province of the jury to find all the material facts. In absence of such finding no judgment could be rendered. Paschal v. Cushman, 26 Tex. 74; State v. Wallace, 3

Fed. 195.    A special verdict must state all the facts essen-
tial to a recovery, and nothing can be supplied by intendment.
Thompson on Trials, § 2651; Rice v. Evansville, 108 Ind. 7;
Seward v. Jackson, 8 Con. 406; Dixon v. Duke, 85 Ind.; Hill
v. Covell, 1 N. Y. 522; Langley v. Warner, 3 N. Y. 327; Kuhl-
man v. Medlinke, 29 Tex. 385; Polling v. Mayn, 3 Pond. 563;
Mitchell v. Colglazier, 106 Ind. 464; King v. Davis, 101 Ind. 75.

When property is taken by the holder of a chattel mort-
gage, for the purpose of foreclosure, and an effort is made in
good faith to foreclose, and the sale is invalid by reason of an
omission to comply with the law, the lien of the mortgage is
not destroyed and the mortgagee is not liable for conversion.
Cushing v. Seymour, 15 N. W. 249.    The case of Everett v.
Buchanan, 2 Dak. 249, is not in conflict with this proposition.

*Bion A. Dodge* and *John W. Bell* for respondent.

The only grounds upon which a person can successfully de-
fend an action for the conversion of property are, by establish-
ing his own right of possession thereto, or showing that the plain-
tiff is not entitled to the possession thereof, or that he has not
converted the property, or that there has been a previous re-
covery against him for the same property, or that the plaintiff
has ratified the conversion.    6 Waits A. & Def. 219; Duncan v.
Spear, 11 Wend. 54; Borwick v. Wood, 3 Jones, 306; Choteau v.
Hope, 7 Mo. 428; Phillips v. Martiney, 10 Gratt. 333; Fouldes
v. Willoughby, 8 M. & W. 540; Simmons v. Lillystone, 8 Exch.
441; Gates v. Goreman, 5 Vt. 317; Hopkinson v. Shelton, 37
Ala. 306.

The plaintiff did not by his pleadings in justict court estop
himself from denying the validity of the sale.    Hill v. Epley, 31
Pa. St. 331; Chatfield v. Simonson, 92 N. Y. 209; Guild v. Rich-
ardson, 6 Pick. 364; Crandall v. Gellop, 12 Conn. 365; Carra-
dine v. Carradine, 33 Miss. 698; Railroad v. Schuyler, 38 Barb.
534; Fletcher v. McGill, 110 Ind. 395; Aiken v. Peck, 22 Vt.
255; Smith v. Sherwood, 4 Conn. 276; Richmond v. Hayes, 3 N.
J. L. 492; Kidd v. Laird, 15 Cal. 162; People v. Frank, 28 Id.
516; Wood v. Jackson, 8 Wend. 40. In order that a judgment in
a former action should bind by way of estoppel in a subsequent

action, it must have directly decided a point which was material in such former action, and is in litigation in the latter. Dixon v. Merritt, 21 Minn. 196; 2 Taylor on Evidence, § 1507; Brooms Legal Maxims, 327; Demarest v. Dary, 32 N. Y. 281; Burlin v. Shannon, 99 Mass. 200; Aurora City v. West, 7 Wall. 82; People v. Johnson, 38 N. Y. 63; Woodgage v. Fleet, 44 N. Y. 1; Freeman on Judgments, 271. .

The evidence of ownership was not contradicted. Possession raises a presumption of ownership. McKeage v. Hanover Fire Ins. Co., 81 N. Y. 38; Holbrook v. N. Y. T. Co., 57 N. Y. 616. It is error to submit a question of fact to the jury where the evidence is not in conflict. Alger v. Gardner, 54 N. Y. 360; Insurance Co. v. Baring, 20 Wall. 159; Meguire v. Corwiner, 101 U. S. 108; U. S. v. One Still, 5 Blatchf. 403.

The provisions of the statute relating to foreclosure sales must be strictly pursued. Chase v. McClelland, 49 Me. 375; Williamson v. Crawford, 7 Black 12; Everett v. Buchanan, 2 Dak. 267; Jones on Chat. Mtges. 437; Spaulding v. Barnes, 4 Gray 320; Mathews v. Fisk, 64 Me. 101; 2 Caine's Cases, 202; 2 Waits A. & D. 196; Simpson v. Carleton, 1 Allan, 109; 39 How. Pr. 429; Hall v. Sampson, 35 N. Y. 274; Pierce v. Haskell, 49 Ill. 23.

A demand is not necessary when defendant has disposed of property that is not in his power to deliver, or when actual conversion is shown. Power v. Bassford, 19 How. Pr. 309; Esmay v. Fanning, 2 How. Pr. 228; 6 Waits A. & D. 206. Or when property has been sold, even under an order of court, when the order is a nullity. Pease v. Smith, 61 N. Y. 477; McPherson v. Neuffer, 11 Rich. 267; Hall v. Chapman, 35 Ala. 553; Robinson v. McDonald, 2 Ga. 116. In trover the damages should embrace the value of the property at the time of conversion. 6 Wait's Act. & D. 222; Comp. Laws, §. 4603.

CORSON, J. This is an action for damages for the unlawful conversion of personal property. Judgment was rendered for plaintiff upon a special verdict. Defendants appeal. The plaintiff, in his complaint, alleges, in substance, that the defendant D. M. Osborne & Co. is a corporation; that on or about

October 8, 1887, he was the owner and in possession of certain described personal property; that on or about said last mentioned date defendants took possession of the same, and that on or about October 20, 1887, defendants, being then in possession of the same, unlawfully disposed of the same, and converted it to their own use, to his damage, etc. Defendants, in their answer, deny each and every allegation of the complaint not specifically admitted. They then set out in detail the facts claimed by them to constitute a justification for said alleged taking and sale, which briefly stated, are as follows: That on the 8th day of November, 1886, the plaintiff executed and delivered to the defendant D. M. Osborne & Co. his certain promissory note bearing date of that day, and payable on November 1, 1887, with 7 per cent interest; that at the same time he executed and delivered to said defendant D. M. Osborne & Co. a chattel mortgage of the property described in the complaint, to secure the payment of said note; that the plaintiff did not take proper care of said personal property so mortgaged, etc.; and that said D. M. Osborne & Co., deeming itself insecure, took possession of said property, and thereafter sold the same, on October 20, 1887, through the defendant Benedict, who acted as the agent of D. M. Osborne & Co., and that said Benedict was at the time sheriff of Grant county, Territory of Dakota. Another defense was also set up that will be referred to hereafter. The chattel mortgage contained, among others, the following provisions authorizing the mortagee to take possession of and sell the mortgaged property: "But if default shall be made in the payment of said sum of money or interest thereon at the time the said note shall become due, or if any attempt shall be made to dispose of or injure said property, or to remove said property from said Grant county, Dakota, or any part thereof, by the said mortagor or any other person, or if said mortgagor does not take proper care of said property, or if said mortgagee shall at any time deem himself insecure, then, thereupon and thereafter, it shall be lawful, and the said mortgagee hereby authorizes its successors or assigns, or its or their authorized agent, to take said property wherever the

same may be found, and hold or sell and dispose of the same
and all equity of redemption at public auction, with notice, as
provided by law, and on such terms as said mortgagee may see
fit." At the close of the trial, the jury, under the direction of
the court, found and returned a special verdict as follows:
"(1) Was the property which the defendants took possession of
and sold under the foreclosure proceedings the same property
which is described and mentioned in the mortgage given by
plaintiff to D. M. Osborne & Co., being the mortgage in ques-
question? Yes. (Have any facts been shown to exist by
which the defendant, the mortgagee herein, had reasonable
grounds to deem himself insecure? No. (3) Had the plaintiff,
before said property was taken by the mortgagees, disposed of
or injured, or attempted to dispose of, remove, or injure, the
property included in said mortgage? No. (4) Was plaintiff,
before the mortgagee took said property, failing or neglecting
to take proper care of said property included in said mortgage?
No. (5) Was the plaintiff, at the time the property was taken
by the mortgagee, guilty of any default of the conditions men-
tioned in said mortgage? No. (6) Did the default mentioned
in the notices of sale of the property in question exist at the
time of the foreclosure proceedings? No. (7) What was the
value of the property in question at the time it was taken pos-
session of by the defendants and sold under foreclosure pro-
ceedings? Answer. $213.76." The jury returned no general
verdict, and the judgment was rendered upon the special ver-
dict alone.

The following errors are assigned: "(1) The court erred
in not sustaining defendant's objection to the introduction of
any evidence, on the alleged ground that the complaint did not
state a cause of action. (2) The court erred in sustaining the
motion of plaintiff to strike out the testimony of the witness
Jones, and the judgment and pleadings in the case of D. M.
Osborne & Co. v. Hubert Humpfner. (3) The court erred in
denying defendants' motion to direct a verdict in favor of de-
fendants. (4) The court erred in submitting each and all
said special findings to the jury. (5) The court erred in

requiring from the jury and receiving a special verdict, which did not include a finding that plaintiff was the owner of the property at the time of the alleged conversion; nor whether in fact the defendant D. M. Osborne & Co. deemed itself insecure at the time of the taking of the mortgaged property. (6) The court erred in entering judgment against defendants without having submitted to the jury the question of whether plaintiff was the owner of the property at the time of the alleged taking by defendant. (7) The court erred as a matter of law, in giving judgment against defendants, on the acts established by the evidence and found by the jury."

Appellants contend that the complaint fails to state a cause of action, it alleging that on a certain day the defendants took possession of the property, but stating no facts showing that such taking was against the will or consent of plaintiff. The complaint was evidently drawn upon the theory that the property came rightfully into the possession of the defendants, but that subsequently it was wrongfully converted by them to their own use, by a wrongful sale, making the action one that under the old common law system of pleadings would have been an action of trover, which seems to be in accord with the intention of the pleader. The action being in the nature of trover, the complaint is, we think, sufficient under the Code. It alleges ownership and possession of the property by plaintiff; that it came into possession of defendants, (the old common law fictitious statement of loss and finding being omitted;) and that while so in the possession of defendants they unlawfully converted the same to their own use. The further allegation that defendants "took possession of said personal property" was unnecessary, and should be treated as surplusage. In trespass, an allegation of possession and wrongful taking would be sufficient, but in an action for conversion, a general or special property, as well as possession or a right of possession, should be averred. The ownership and possession being alleged, the right to possession follows; and the allegation that the property was in the possession of the defendants when converted carries with it no inference that defendants had a right to dispose of it as

against the owner.   Possession is only evidence of ownership
and right to possession as against persons who show no title,
but not against the true owner.   Magee v; Scott, 9 Cush. 148.

2.   Appellants further contend that, as the plaintiff alleged
he was the owner of the property at the time of the alleged
taking, which was denied by the answer, a material issue was
made on the question of ownership, and this issue was not
passed upon by the jury, there being no general verdict and no
finding upon this issue by the special verdict.   This would un-
doubtedly be a fatal error if the facts were as claimed by coun-
sel.   But an examination of the answer discloses the fact that
while, perhaps, the ownership of the plaintiff was put in
issue by the general denial, the defendants have admitted
the ownership by plaintiff in clear and unequivocal terms
in other parts of the answer.     In paragraph 3 it is
alleged by the defendants that the plaintiff at the time
of the making of the chattel mortgage set out in the
answer, was the owner of the personal property therein de-
scribed, (being the same claimed by plaintiff in his complaint.)
Plaintiff being then the owner, that ownership will be pre-
sumed to continue, in the absence of evidence showing a trans-
fer of the title.   1 Greenl. Ev. §§ 40, 41, and notes; Magee v.
Scott, 9 Cush. 148.   This ownership, therefore, being admitted
in one defense in the answer, though denied in another, left no
issue of the question of ownership to be submitted to the jury.
This court recently held in McLaughlin v. Alexander, (S. D.)
49 N. W. Rep. 99, that an admission in one defense of facts al-
leged in the complaint, though denied in another defense in the
same answer, relieved the plaintiff from the necessity of prov-
ing such facts on the trial.   Facts admitted in the pleadings
need not be submitted to or found by the jury in a special ver-
dict.   3 Wait, Pr. 196.   The facts admitted by the pleadings,
together with those found by the jury, present the whole case
in proper form for the consideration of the court.   Barto v.
Himrod, 8 N. Y. 483.   A special verdict, as contended by coun-
sel, must find on all the material facts put in issue by the plead-
ings when no general verdict is returned with the special ver-

dict; and this is the case, although the evidence may establish beyond controversy the existence of the facts not found. 2 Thomp. Trials, §§ 2650, 2651; Paschal v. Cushman, 26 Tex. 74; Rice v. City of Evansville, 108 Ine. 7, 9 N. E. Rep. 139; Mitchell v. Colglazier, 106 Ind. 464, 7 N. E. Rep. 199. The two rules, however, are perfectly consistent. All material facts alleged and not admitted are in issue, and the special verdict must find as to all these issues; but a fact alleged and admitted by the pleadings is not in issue, and therefore need not be found.

3. Again, appellants insist that, as the mortgage provided that, if the mortgagee "shall at any time deem itself insecure, then, thereupon and thereafter, it shall be lawful for said mortgagee * * * to take said property, * * * and hold or sell or dispose of the same," the jury should have been required to find the fact only as to whether or not D. M. Osborne & Co. did deem itself insecure, and that it was error in the court to submit questions 2 to 6, inclusive, to the jury. We cannot agree with counsel in their construction of the clause in the mortgage above stated. This clause does not, we think, confer upon the mortgagee the absolute and arbitrary power of declaring for itself, without sufficient cause, that it does deem itself insecure, and authorize it to proceed and take and sell the property before the debt becomes due, but that it only authorizes the mortgagee to deem itself insecure, and to take such possession and sell when the mortgagor has done or is about to do some one or more of the acts specified in the mortgage as grounds upon which the mortgagee may proceed to take such possession and sell. To hold that the right to take possession and sell before the debt becomes due depends upon the mortgagee's election and pleasure, and not upon the facts as they actually exist, would be clearly in conflict with other express and implied contracts contained in the note and mortgage, which are to be construed together. These clearly contemplate time for payment as specified in the note or mortgage, and possession by the mortgagor until the maturity of the debt, unless he does or is about to do some act detrimental

to or which will impair the security. Therefore until the debt matures, or some act is done or threatened, specified in the mortgage, which authorizes the mortgagee to take possession and sell, the mortgagor's possession cannot be legally disturbed by the mortgagee. This clause has been construed by the supreme court of Nebraska, and with the construction given we fully agree. The court says: "The words 'if the mortgagee shall at any time feel unsafe or insecure,' do not mean that he may arbitrarily and without cause declare that he feels unsafe or insecure. * * * To justify the mortgagee, therefore, in his action in declaring that he feels unsafe and insecure, where there is an implied contract that the mortgagor shall remain in possession, the mortgagor must be about to commit, or have committed, some act which tends to impair the security; and, unless such facts exist, the right does not become operative." Newlean v. Olson, 22 Neb. 717, 36 N. W. Rep. 155; Lichtenberger v. Johnson, (Neb.) 49 N. W. Rep. 336. The questions, therefore, submitted to the jury by the court were proper and pertinent to the issues in the case; and the question whether or not D. M. Osborne & Co. deemed itself insecure was immaterial. It was the facts as they actually existed at the time D. M. Osborne & Co. took possession and sold the property that it was the duty of the jury to determine, and upon those they found fully in their special verdict.

4. The appellants further contend that the court erred in striking out the docket entries and other proceedings had in the justice court in the case of D. M. Osborne & Co. v. Humpfner, the plaintiff in this action, given in evidence by defendants. In this contention we think the appellants are correct. These proceedings are set out in the answer as one of the defenses relied upon. The entries in the justice's docket and record in that action are fully set out as exhibits in the abstract, and from them and the evidence admitted and not stricken out it appears that after the action now before us was commenced, and before the answer was filed, D. M. Osborne & Co. commenced an action in a justice court of Grant county against Humpfner, the plaintiff herein, to recover the sum appearing

to be due on a note for $75, given by said Humpfner to D. M. Osborne & Co. in November, 1884. In that action Humpfner appeared, and filed by his attorney the following answer: "The defendant herein, for answer to the complaint herein, admits (1) the execution and delivery of the notes described in plaintiff's complaint, and defendant denies that the said note has not been paid as alleged in said complaint; but defendant alleges that on or about the 6th day of November, A. D. 1886, the defendant paid said described note by giving to said plaintiff a promissory note for the sum of $207, payable on the 1st day of November, 1887, and drawing interest at the rate of ten per cent per annum, and that said note for said sum of $207 was secured by mortgage on personal property of the defendant. Defendant further alleges, in avoidance of the demand of plaintiff, that the indebtedness for which said note in plaintiff's complaint described was given has been paid by the giving of said new note for the sum of $207 on the said 6th day of November, 1886, as above mentioned, and defendant further says that the payment of note for said $207 has been sought to be enforced by the sale of chattel property of said defendant, on which personal property security was given by said defendant to plaintiff. That by virtue of said alleged sale of said personal property of defendant as aforesaid the said note of $207, heretofore described, has been satisfied to the amount of $109.85 or thereabouts. Defendant further alleges that on the 14th day of January, A. D. 1888, plaintiff recovered of defendant the sum of $100 on a promissory note, which said promissory note was given for the same indebtedness that said note in plaintiff's complaint described, and which two last-mentioned notes were in fact paid by the giving of said note for the sum of $207, as above mentioned." Judgment was rendered by the justice in favor of Humpfner for costs, and the note was marked, "Canceled by judgment," by the justice.

Appellants insist that, as the judgment was rendered in the justice court in favor of Humpfner, he received the benefit of the proceeds of the foreclosure sale of the mortgaged property, and thereby ratified the foreclosure proceedings, and is

now estopped from impeaching the sale under the mortgage, and that, had the court not stricken out this evidence, it would have constituted a full defense to this action, or at least the jury would have been authorized to find a verdict in favor of defendants thereon. Counsel for respondent answers this position by insisting that by the answer in the justice court two defenses were pleaded, upon either of which the justice might have found in favor of Humpfner, and if he did so find on the first defense pleaded no estoppel would arise; and he further insists that the rule is that, when it is uncertain upon which defense the judgment was based, there is no estoppel as to either defense, and hence the justice court proceedings were properly excluded by the court in this action. We do not understand that counsel for appellants contend that the judgment in the justice court would constitute an estoppel on the ground that any question directly involved in this action was adjudicated in the justice court action, but upon the theory that the act of Humpfner in claiming and accepting the benefit of the proceeds of the foreclosure sale in the extinguishment of his note was in the nature of a ratification of the foreclosure proceedings; that, claiming in this action that he is entitled to a judgment against D. M. Osborne & Co. for the value of the property alleged to have been converted, and in the justice court action claiming and receiving the benefit of the proceeds of the foreclosure sale, are entirely inconsistent. But, assuming that this is the true view of the nature of the defendants' claim, we are confronted with the same difficulty that would arise in case the judgment of the justice court had been pleaded in bar to the present action and that is, that there are two defenses pleaded, —one that the $207 note was given in payment of this $75 note and the $100 note and interest, and that the two notes are merged in the $207 note; and, second, that the note was paid by the proceeds of the foreclosure sale. Now, if the judgment was based upon the first defense, no estoppel of any kind would arise. If upon the second, then the estoppel would, we think, be established. Had the justice court proceedings been pleaded

VOL. 2, S. D.—21

in bar to the action, the rule laid down by the respondents' counsel is correct, and is well stated by the court in Russell v. Place, 94 U. S. 606, as follows: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties; but to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence, showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible." See, also, Bergeron v. Richardott, 55 Wis. 129, 12 N. W. Rep. 384; People v. Frank, 28 Cal. 516; Kidd v. Laird, 15 Cal. 161. We see no reason, however, why the same rule may not be applied to this case; and, assuming that it does so apply, the evidence admitted and stricken out tended to show that the justice court judgment was based upon the second defense, and hence the question should have been submitted to the jury.

Humpfner, on the trial in the justice court, was called as a witness in his own behalf, and testified as follows: "I remember having a settlement on November 6, 1886, with the agent, Burnell. He wanted me to pay the two notes past due. I gave him a new note for $207, dated November 6, 1886, due November 1, 1887. They foreclosed the mortgage securing the new note of $207. I never owed D. M. Osborne & Co. any other note or account. The mortgage which was foreclosed was the mortgage securing the $207 note. The $207 note bears on the margin thereof the words "Collateral to No. 18,535 E, and No.

11,923 E,' which was written on the margin of the note in my presence at the time of giving it." And on the $207 note appear the words, 'Collateral to 11,923 E." Whether 11,923 E refers to the $75 note or the $100 note is left in doubt, so far as we can discover from the abstract. It was admitted that the $207 note was given for the same debt as that evidenced by the $75 and $100 notes, but not that it was given in payment of said notes; and hence the court could not say as matter of law upon which defense the judgment was founded. There being an uncertainty, then, as to the defense upon which the judgment was based, under the decision in Russell v. Place, *supra,* extrinsic evidence would be competent to show the precise point involved; and it seems some evidence of this character was admitted on the trial of this case, and now remains in the record. If, as contended by counsel for appellants, Humpfner, after this suit was commenced and while it was pending, claimed in the suit of D. M. Osborne & Co. against him in the justice court the benefit of the proceeds of the foreclosure sale, and actually received the benefit of that sale by having the proceeds of the same to the amount of his note and interest applied to the extinguishment of that note, with full knowledge of all the facts, he will be estopped from impeaching the validity or regularity of the sale. It would seem but natural justice that one who accepts the proceeds of a sale of his property, or the benefit of the sale, with a full knowledge of all the facts, should not afterwards be permitted to question the regularity or legality of the sale, and such seems to be the law. Test v. Larsh, 76 Ind. 452; Kile v. Yellowhead, 80 Ill. 208; Hartshorn v. Potroff, 89 Ill. 509; Southard v. Perry, 21 Iowa, 488. Assuming, then, that all the proceedings taken by D. M. Osborne & Co. to foreclose the Humpfner mortgage were unauthorized and irregular under the terms of the mortgage, it was still competent for Humpfner to waive the irregularity in the proceedings, and ratify the sale, either in express terms or by claiming in a judicial proceeding the benefit of the proceeds arising from the sale. Such claim to the benefit of the proceeds is entirely inconsistent with the

assertion of the invalidity of the sale. Such claim, therefore, with a full knowledge of all the facts, must be held, if made as claimed, as tending to prove that Humpfner waived the alleged irregularity, and ratified the sale, and should therefore have been submitted to the jury. "A party who judicially demands the proceeds of a sale thereby admits its legality, and is estopped from impeaching it." Boubede v. Ames, 29 La. Ann. 274; Flanigan v. Turner, 1 Black, 491; Weist v. Grant, 71 Pa. St. 95; 2 Herman Estop. § 1069. And when one who has the choice of two remedies elects to take one with a full knowledge of all the facts, he is estopped from afterwards claiming the benefit of the other as to the same property. Farwell v. Myers, 59 Mich. 179, 26 N. W. Rep. 328; Goss v. Mather, 46 N. Y. 689; Moller v. Tuska, 87 N. Y. 166; Kinney v. Kiernan, 49 N. Y. 164; Connihan v. Thompson, 111 Mass. 270. Appellants counsel insist that, while Humpfner in the first instance elected to hold D. M. Osborne & Co. for the conversion of his property by the foreclosure sale, he afterwards sought to and did avail himself of the proceeds of the sale by having such proceeds applied in extinguishing his note; and that suit resulted in a judgment in his favor while the suit for conversion was pending, and that the latter suit was thereby virtually abandoned. Such, we think, is the law as applicable to this case. If defendant could show that the judgment of the justice court was rendered upon the second defense, and that Humpfner has received the benefit of the foreclosure sale, which the evidence stricken out tended to establish, these facts should have been submitted to the jury, and we are of the opinion that the court erred in striking out this evidence. For this error the judgment should be reversed, and a new trial granted, and it is so ordered; all the judges concurring.